CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JAN 27 2022
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| CYNTHIA J.,[1] | ) | |
|     Plaintiff, | ) | Civil Action No. 4:21-cv-00001 |
| v. | ) | |
| | ) | REPORT & RECOMMENDATION |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | By:    Joel C. Hoppe |
|     Defendant.[2] | ) |          United States Magistrate Judge |

Plaintiff Cynthia J. asks this Court to review the Commissioner of Social Security's final decisions denying Cynthia's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, *id.* §§ 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, the parties' arguments, and the applicable law, I find that substantial evidence supports the Commissioner's denial of benefits and the decision should be affirmed.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Acting Commissioner Kijakazi is hereby substituted as the named defendant in this action. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

1

2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe medical impairment that satisfies the Act's duration requirement; (3) has an impairment that

meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work existing in the economy. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[3] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

In February 2019, Cynthia filed for DIB and SSI alleging that she was disabled by multiple medical conditions including chronic pain with possible arthritis in the left shoulder, neck and lower-back pain, swelling in the left lower extremity, chest pain, situational anxiety, depression, and migraines. *See* Administrated Record ("R.") 210–13, 217–22, 237–39. Cynthia initially alleged that she stopped working "because of [her] condition(s)" on April 1, 2018, R. 239, but she later amended her alleged onset date ("AOD") to September 17, 2018, R. 40. She was fifty-five years old, or a person of "advanced age" under the regulations, on her amended AOD. *See* R. 40, 56; 20 C.F.R. §§ 404.1563(e), 416.963(e). Disability Determination Services ("DDS"), the state agency, denied Cynthia's claims initially in April 2019, R. 56–87, and upon reconsideration that September, R. 90–125. On May 6, 2020, Cynthia appeared with counsel and testified by telephone at a hearing before ALJ H. Munday. *See* R. 34–55. A vocational expert ("VE") also testified. R. 50–55.

ALJ Munday issued an unfavorable decision on June 24, 2020. R. 15–28. She found that

---

[3] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

Cynthia's "left shoulder impingement" was her sole "severe" medically determinable impairment ("MDI") during the relevant period. R. 18 (also finding non-severe MDI of osteoarthritis in the left knee). Cynthia's mental MDIs of "adjustment disorder with depressed mood and anxiety" were non-severe because they did "not cause more than minimal limitation in [Cynthia's] ability to perform basic mental work activities[.]" *Id.* More specifically, those MDIs caused "no limitation[s]" in Cynthia's overall abilities to interact with others and adapt or manage herself and only "mild limitation[s]" in her abilities to understand, remember, or apply information and to concentrate, persist, or maintain pace. R. 18–20; *see also* R. 21 (rejecting DDS opinions that Cynthia's "severe" depressive and anxiety disorders caused "mild" to "moderate" limitations in these broad functional areas). Cynthia's severe left-shoulder disorder did not meet or medically equal the relevant Listing. R. 21 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02).

ALJ Munday then evaluated Cynthia's residual functional capacity ("RFC") based on all her MDIs during the relevant time, including those she found non-severe. *See* R. 18, 21–26. She found that Cynthia's physical MDIs restricted her to performing "medium work"[4] except she could only "lift and carry 25 pounds occasionally and 20 pounds frequently with the left upper extremity; frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; never climb

---

[4] "Medium work involves occasionally lifting or carrying no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can perform medium work, then he or she can also perform light work," R. 21 n.1; *accord* 20 C.F.R. §§ 404.1567(c), 416.967(c), which involves occasionally lifting or carrying up to 20 pounds and frequently lifting or carrying objects weighing 10 pounds, 20 C.F.R. §§ 404.1567(b), 416.967(b). "'A full range of medium work [further] requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday' and 'being on one's feet for most of the workday is critical.'" *Bilotta v. Saul*, 850 F. App'x 162, 164 n.4 (4th Cir. 2021) (quoting SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983)). "Like medium work, light work may involve 'a good deal of walking or standing,' but it may also involve 'sitting most of the time . . . with some pushing and pulling of arm[-]hand or leg-foot controls.'" *Id.* at 165 n.5 (quoting 1983 WL 31251, at *5); *see also Neal v. Astrue*, Civ. No. JKS 09-2316, 2010 WL 1759582, at * (D. Md. Apr. 29, 201) ("The full range of light work requires the ability to stand or walk for up to six hours per workday or sit 'most of the time with some pushing and pulling of arm or leg controls.'" (quoting 20 C.F.R. § 404.1567(b))).

ladders/ropes/scaffolds"; frequently push/pull and operate "foot controls with the bilateral lower extremities"; and tolerate frequent exposure to pulmonary irritants and hazardous conditions. R. 21–22; *see also* R. 25 (finding that Cynthia could work at a "limited medium exertional level"). ALJ Munday also found that Cynthia's non-severe mental MDIs did not require imposing any restrictions on her ability to perform specific work-related activities. *See* R. 21, 25–26 (rejecting DDS psychologists' opinions that Cynthia could do "unskilled work," follow "simple" instructions, make "simple decisions," perform "routine" or "moderately complex" tasks, and concentrate enough to "complete the approximate 2-hour segments of time that make up a typical work day"). Cynthia's exertional limitations ruled out her returning to her past work as an airline baggage handler/ticket taker. *See* R. 26 (citing R. 51–52). Based on the VE's testimony, however, ALJ Munday found that Cynthia could perform less-demanding "medium," "unskilled" occupations (dietary aide, counter supply worker, cleaner) that offered a significant number of jobs in the national economy. R. 27–28 (citing R. 51–55). Thus, Cynthia was not disabled after September 17, 2018. *See* R. 28. The Appeals Council declined to review the ALJ's decision in November 2020, R. 1–5, and this appeal followed.

### III. Discussion

Cynthia makes several arguments challenging two aspects of ALJ Munday's RFC determination. *See generally* Pl.'s Br. 3–4, 5 (challenging ALJ's finding that she could do "medium" work), 7–8 (challenging ALJ's finding that her mental MDIs caused at most "mild" limitations and did not require RFC limited to "unskilled" work), ECF No. 14. First, she asserts that the ALJ's exertional RFC is flawed because "there was no evidence that [Cynthia] can lift up to 50 pounds with her right arm" and ALJ Munday did not "provide a 'narrative discussion' explaining why" Cynthia could meet the lifting/carrying demands of "medium work" when using

5

her right upper extremity, but was limited to lifting/carrying 25 pounds occasionally and 20 pounds frequently when using her left upper extremity. *Id.* at 4–5; *see also id.* at 1 ¶¶ 1–2. Cynthia also faults ALJ Munday for stating that she was "limited to *light* work," *id.* at 5 (quoting R. 26), despite also finding that she could do "*medium* work" that only required lifting/carrying 25 pounds occasionally and 20 pounds frequently with the left extremity, *id.* at 1 ¶ 3 (citing R. 21–22). Third, she asserts that ALJ Munday "did not discuss" the DDS psychologists' opinions that Cynthia's mental MDIs caused "a moderate limitation in concentration, persistence, and pace (CPP)," and that ALJ's Munday's RFC finding erroneously "does not account for [this] moderate limitation." *Id.* at 1 ¶ 5; *see also id.* at 7–8. Finally, Cynthia argues that ALJ Munday "failed to consider" the DDS psychologists' opinions that Cynthia should be limited to "unskilled" work and "fail[ed] to explain why she did not include this restriction in the RFC" finding. *Id.* at 2; *see also id.* at 5–6. She concedes ALJ Munday's failure to expressly restrict her to "unskilled" work "was probably harmless, however, because the only occupations" that ALJ Munday identified at step five "were all SVP 2," which is necessarily "unskilled work." R. 6 (emphasis omitted) (citing R. 27). These arguments are not persuasive.

\*

A claimant's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite his or her medical impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at \*2 (July 2, 1996) (emphasis omitted). The Commissioner "has specified the manner in which an ALJ should assess a claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). First, because RFC is by definition "a function-by-function assessment based upon all of the relevant evidence of [the claimant's] ability to do work related activities," SSR 96-8p, 1996 WL 374184, at \*3, the ALJ

6

must identify each impairment-related functional restriction that is supported by the record, *see Monroe v. Colvin*, 826 F.3d 17, 179 (4th Cir. 2016). *See* SSR 96-8p, 1996 WL 374184, at *1, *5 (explaining that an ALJ determining the claimant's exertional RFC must identify the claimant's impairment-related "functional limitations or restrictions" and evaluate his or her "work-related abilities on a function-by-function basis," e.g., sitting, standing/walking, lifting/carrying, before the ALJ can express the RFC "in terms of the exertional levels of work, [i.e.,] sedentary, light, medium, heavy, and very heavy"). The RFC should reflect credibly established "restrictions caused by medical impairments and their related symptoms" that impact the claimant's "capacity to do work-related physical and mental activities" on a regular and continuing basis, SSR 96-8p, 1996 WL 374184, at *1, *2. Second, the ALJ's decision must include a "narrative discussion describing" how specific medical facts and non-medical evidence "support[] each conclusion" in the RFC assessment, SSR 96-8p, 1996 WL 374184, at *7, and logically explaining how he or she weighed any inconsistent or contradictory evidence in arriving at those conclusions, *Thomas*, 916 F.3d at 311. Generally, a reviewing court will affirm the ALJ's RFC findings when he or she considered all the relevant evidence under the correct legal standards, *see Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and the written decision built an "accurate and logical bridge from that evidence to his [or her] conclusion[s]," *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). *See Thomas*, 916 F.3d at 311–12.

    ALJ Munday's decision satisfies this "deferential standard of review," *Dunn v. Colvin*, 607 F. App'x 264, 271 (4th Cir. 2015). *See Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) ("This court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. . . . [T]he justification provided by the ALJ—albeit somewhat sparse—was sufficient to allow us to

7

determine that the ALJ performed an adequate review of the whole record and that the decision is supported by substantial evidence.").

First, contrary to Cynthia's assertions, ALJ Munday did discuss the DDS psychologists' opinions about Cynthia's mental MDIs, and she explained why those opinions were not "persuasive," R. 25, considering other relevant evidence in the record, including "minimal findings of a depressed mood and recent memory deficiency on mental status exams," R. 25–26 (citing R. 347–48), the lack of mental-health treatment during the relevant time, R. 26; *see also* R. 24–25 (noting Cynthia was a "no-show and no-call" at two behavioral health appointments in March 2020), and Cynthia's reported activities and mental abilities, R. 19–20 (citing R. 261–63, 273–80, 347, 351). The DDS psychologists who reviewed Cynthia's records opined that "[a]t most, she appear[ed] to have moderate limitations" in the four broad functional areas.[5] R. 64, 79, 103, 119; *see also* R. 63, 78, 102, 118 (identifying "moderate" limitations with CPP). ALJ

---

[5] ALJs use a "special technique" to identify functional limitations caused by the claimant's mental MDIs and related symptoms. *See* 20 C.F.R. §§ 404.1520a, 416.920a. Before determining the RFC, the ALJ must "rate the degree" to which claimant's mental "impairment(s) interferes with [his or her] ability to function independently, appropriately, effectively, and on a sustained basis" in "four broad functional areas . . . : Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* §§ 405.1520a(c)(2)–(3), 416.920a(c)(2)–(3). The ALJ rates the claimant's overall degree of limitation using a five-point scale (none, mild, moderate, marked, and extreme), with the first two points typically representing mental MDIs that are "not severe." *Id.* §§ 404.1520a(d), 416.920a(d). The ratings should be based on all the relevant evidence in the record, including clinical signs on mental-status exams, the nature and efficacy of any treatment, and the claimant's symptoms or other statements describing how his or her mental impairment(s) impacts overall functioning in these areas. *See id* §§ 404.1520a(c)(2), 416.920a(c)(2). The ALJ's ratings also play an important role in a proper RFC determination, which is a more "holistic and fact-specific evaluation" of the claimant's ability to work for eight hours a day, five days a week despite his or her medical impairments, including those that are not "severe." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017); *see Cynthia W. v. Saul*, No. 5:18cv102, 2020 WL 2090677, at *5 (W.D. Va. Apr. 30, 2020) (affirming RFC finding that did not include any mental limitations where the ALJ "adequately explained" at step two why the claimant's non-severe "depression and anxiety caused 'mild' limitations in her mental functioning overall, but did not actually impair her capacities to sustain more specific work-related mental functions under ordinary workplace conditions").

Munday disagreed with those ratings, and she explained that Cynthia's ability to "read '1 to 2 hours per day'" and to pay attention throughout a comprehensive psychological exam in April 2019, as noted by the examining psychologist, R. 347, supported a finding that Cynthia's mental MDIs caused a "mild limitation" in her overall ability to concentrate, persist, or maintain pace, R. 19 (quoting R. 351). Cynthia does not point to any other evidence not considered by the ALJ suggesting that she had "moderate" limitations with CPP, that her mental MDIs were "severe," or that she should be limited to "unskilled" work. *See generally* Pl.'s Br. 2, 5–8; *cf. Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (affirming denial of benefits where ALJ's findings were "amply supported by the record" and plaintiff "failed to point to *any* specific piece of evidence no considered by the [ALJ] that might have changed the outcome of his disability claim"). Read as a whole, ALJ Munday's decision shows that she considered all the relevant evidence under the correct legal standards when assessing Cynthia's mental MDIs and reasonably found that her overall "mild" limitations "did not translate into any specific, credibly established restrictions on her capacities" to perform mental work activities. *Cynthia W.*, 2020 WL 2090677, at *5; *see also Perry v. Colvin*, No. 2:15cv1145, 2016 WL 1183155, at *5–7 (S.D. W. Va. Mar. 28, 2016); *Brooks v. Astrue*, No. 5:10cv104, 2012 WL 1022309, at *11–12 (W.D. Va. Mar. 26, 2012) (Urbanski, J.). Accordingly, I find no error in this aspect of her RFC determination.[6]

Second, substantial evidence supports ALJ Munday's finding that Cynthia could perform a "limited" range of "medium" exertion work, R. 25; *see* R. 21–22, 53–54, despite her medically

---

[6] Moreover, Cynthia is correct that ALJ Munday's failure to include "unskilled work" in the RFC finding was harmless "because the VE cited three unskilled jobs in response to the dispositive hypothetical question and the ALJ adopted those jobs at step five . . . in finding [Cynthia] not disabled," *Pack v. Berryhill*, No. 1:18cv191, 2019 WL 1099707, at *5 n.5 (M.D.N.C. Mar. 8, 2019). *See* Pl.'s Br. 6; R. 27–28 (citing R. 51–55).

determinable impairments. "As the person seeking benefits, Cynthia was primarily responsible for producing evidence sufficient to persuade" the ALJ, *Cynthia T. v. Saul*, No. 4:18cv11, 2019 WL 9075877, at *7 (W.D. Va. July 11, 2019), that her alleged functional "limitations or restrictions [were] attributable to medically determinable impairments," SSR 96-8p, 1996 WL 374184, at *2. In fact, the ALJ would be "incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain[.]" *Id.* ALJ Munday found that Cynthia had "no limitation with or diagnosis from a provider for right arm problems or impairments," R. 26; *see* R. 23, 25, and Cynthia does not challenge this finding in arguing that "the ALJ failed to provide a 'narrative discussion' explaining why [she] can do . . . medium work with the right upper extremity," *see* Pl.'s Br. 4 ("Since there was no evidence that [Cynthia] can lift up to 50 pounds with her right arm, and it was found that [she] cannot lift and carry 25 pounds frequently with her left arm, she cannot do medium work."). Without any evidence of an MDI restricting the use of Cynthia's right arm, ALJ Munday could reasonably find that Cynthia could meet the lifting/carrying demands of "medium" work when using her right upper extremity, R. 21, 25–26, 53. *See* SSR 96-8p, 1996 WL 374184, at *2; *cf. Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (explaining that an ALJ "is entitled to rely not only on what the record says, but also on what it does not say," about the claimant's impairment-related limitations when evaluating RFC, and affirming denial of benefits where claimant's record contained no evidence that he experienced severe or continuous headaches).

      Moreover, ALJ Munday partially adopted the DDS physician's medical opinion that Cynthia should be limited to lifting/carrying 25 pounds occasionally and 20 pounds frequently, R. 25 (citing R. 104–05, 119–21), to accommodate her "left shoulder impingement" and pain-

related symptoms, R. 18, 23–26. Any restrictions that the DDS physician put on Cynthia's right upper extremity were "not supported by the . . . record, which reflect[ed] . . . no diagnosis from a provider for right arm problems or impairments," R. 26. ALJ Munday also explained that Cynthia's statements that she had pain "'all day every day,' most severe in the 'left shoulder . . .' lasting from 'a few minutes to sometimes hours'" and that she could "lift and carry '10 pounds' or a 'gallon of milk'" were "not entirely consistent" with other relevant evidence in the record, R. 22–23 (citing R. 42–43), including full strength and only "occasional[] . . . left shoulder joint tenderness with moderate-severe impingement" on exams, a normal X-ray of the left shoulder and AC joint, the "routine, conservative" nature of treatment for that impairment, and Cynthia's statements that pain medications were "relatively effective in controlling her symptoms," R. 23 (citing R. 351–56, 357, 388–90, 421, 423–24, 455).[7] This narrative discussion allows the Court "to see how the evidence in the record—both medical and nonmedical—supports the ALJ's [exertional] RFC determination." *Thai L. v. Saul*, No. 7:19cv708, 2021 WL 519904, at *8 (W.D. Va. Feb. 8, 2021).

Finally, ALJ Munday's isolated statement that Cynthia was "limited to *light* work with lifting and carrying 25 pounds occasionally and 20 pounds frequently with the left upper extremity," Pl.'s Br. 1–2 (quoting R. 26), appears to be a scrivener's error. *See* R. 21, 25, 27 (referencing "medium" or "limited medium" exertional work). The ALJ's findings about Cynthia's capacities for lifting and carrying fall between "light" and "medium" exertion work. *See* 20 C.F.R. §§ 404.1567(b)–(c), 416.967(b)–(c). They exceed the definition of light work because Cynthia can occasionally lift/carry 25 pounds and frequently lift/carry more than 10

---

[7] Again, Cynthia does not challenge any of these findings. *See* Pl.'s Br. 4 (asserting only that "[t]here was utterly no explanation" why the ALJ found Cynthia "could do the full range of medium work with the *right* arm and lift and carry 25 pounds occasionally and 20 pounds frequently with the left").

11

pounds, but they fall short of the full range medium work because she cannot lift up to 50 pounds with her left arm. *See id.* Consistent with the regulations, ALJ Munday asked the VE if there were any jobs in the national economy for a hypothetical person who could do "medium work . . . but with the left upper extremity lift and carry 25 pounds occasionally and 20 pounds frequently, but otherwise medium," R. 51; *see also* R. 53, with additional restrictions not relevant here. *See* R. 51–52. The VE testified that he was "familiar with the SSA's regulatory definitions of . . . the various exertional levels," R. 50, and that, based on his professional experience, a person with these exertional limitations could work as a dietary aide (71,000 positions nationally), counter supply worker (125,000 positions nationally), or cleaner (40,000 positions nationally), R. 52. *See* R. 27, 51–54. Cynthia does not challenge the VE's jobs-numbers testimony or argue that ALJ Munday failed to resolve any apparent conflict between that testimony and the Dictionary of Occupational Titles. *See* R. 27 ("The [VE] responded there were no such conflicts, apparent or otherwise."). Accordingly, the VE's testimony provides substantial evidence supporting the ALJ's decision to deny benefits. *See Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (citing *Johnson*, 434 F.3d at 659); *Walls v. Barnhart*, 296 F.3d 287, 291–92 (4th Cir. 2002).

    For the foregoing reasons, I respectfully recommend that the presiding District Judge **DENY** Cynthia's motion for summary judgment, ECF No. 13, **GRANT** the Commissioner's motion for summary judgment, ECF No. 15, **AFFIRM** the Commissioner's final decision, and **DISMISS** the case from the Court's active docket.

## Notice to Parties

    Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to counsel of record.

ENTER: January 27, 2022

Joel C. Hoppe
United States Magistrate Judge